IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION
_____

| | | |
|---|---|---|
| THOMAS REEDY, | § | |
|       Defendant-Petitioner, | § | |
| | § | NO.  4:12-CV-271-Y |
| v. | § |     (4:00-CR-054-Y) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff-Respondent. | § | |

**RESPONSE TO SUCCESSIVE MOTION UNDER 28 U.S.C. § 2255**

Respectfully submitted,

SARAH R. SALDAÑA
UNITED STATES ATTORNEY

s/ Frank L. Gatto_____
FRANK L. GATTO
Assistant United States Attorney
Texas Bar No. 24062396
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102
Telephone: 817.252.5213
Facsimile: 817.252.5514
E-mail: Frank.Gatto@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................iii

RESPONSE TO SUCCESSIVE MOTION UNDER 28 U.S.C. § 2255 ............................ 1

I.   BACKGROUND ............................................................................................... 1

   A.  Facts and Procedural History ..................................................................... 1

   B.  Issue Presented ........................................................................................ 5

II.  STANDARD OF REVIEW .................................................................................. 6

III. ANALYSIS ....................................................................................................... 8

   A.  Reedy's "new" evidence is insufficient to clearly and convincingly establish
      that no reasonable factfinder would have convicted him because his "new"
      evidence is incomplete, unsubstantiated, and speculative........................................ 9

   B.  Reedy's incomplete, unsubstantiated, and speculative evidence fails to
      clearly and convincingly show no reasonable factfinder would have
      convicted him .......................................................................................... 14

CONCLUSION .................................................................................................... 17

CERTIFICATE OF SERVICE.................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Garcia v. Quarterman*, 573 F.3d 214 (5th Cir. 2009) ......................................... 6

*In re: Morris*, 328 F.3d 739 (5th Cir. 2003) ................................................ 7, 8

*Reedy v. United States*, 546 U.S. 1111 (2006) .................................................. 4

*Reyes-Requena v. United States*, 243 F.3d 893 (5th Cir. 2001) ........................................ 7

*Rocha v. Thaler*, 626 F.3d 815 (5th Cir. 2010) .................................................. 8

*Schlup v. Delo*, 513 U.S. 298 (1995) ...................................................... 8

*Strickland v. Washington*, 466 U.S. 668 (1984) ................................................ 9

*United States v. Orozco-Ramirez*, 211 F.3d 862 (5th Cir. 2000) ...................................... 6

*United States v. Reedy*, 145 F. App'x 465 (5th Cir. 2005) ......................................... 1, 4

*United States v. Reedy*, 304 F.3d 358 (5th Cir. 2002) ........................................... 1, 4, 16

*United States v. Reedy*, 393 F. App'x 246 (5th Cir. 2010) .......................................... 1

*United States v. Scruggs*, __ F.3d __, 2012 U.S. App. LEXIS 17247

   (5th Cir. Aug. 16, 2012) .............................................................. 8

**Federal Statutes**

18 U.S.C. § 2252 ...................................................................... 3

18 U.S.C. § 2252A ..................................................................... 3

28 U.S.C. § 2244 ...................................................................... 6

28 U.S.C. § 2244(b)(3)(C) ................................................................................... 7

28 U.S.C. § 2254 ................................................................................................. 6

28 U.S.C. § 2255 ........................................................................ 1, 4, 5, 6, 7, 8, 17

28 U.S.C. § 2255(h) ............................................................................................ 7

28 U.S.C. § 2255(h)(1) ...................................................................................... 8, 9

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION
_____

| | | |
|---|---|---|
| THOMAS REEDY, | § | |
|      Defendant-Petitioner, | § | |
| | § | NO.  4:12-CV-271-Y |
| v. | § |     (4:00-CR-054-Y) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff-Respondent. | § | |

**RESPONSE TO SUCCESSIVE MOTION UNDER 28 U.S.C. § 2255**

The government opposes Thomas Reedy's ("Reedy") successive section 2255 motion because he fails to show his allegedly newly discovered evidence, if proven and viewed in light of all the evidence, is sufficient to clearly and convincingly establish that no reasonable factfinder would have convicted him of selling subscription access to child-pornography websites and possessing child pornography.

## I.     BACKGROUND[1]

### A.    Facts and Procedural History

Reedy founded, owned, and operated Landslide, Incorporated ("Landslide"), a Fort Worth, Texas, company that provided computerized credit card-verification services to webmasters whose websites sold adult and child pornography.  An online investigation conducted by the FBI's *Crimes Against Children Task Force* determined that Landslide

---

[1] Unless expressly cited from a different source, the background is from the appellate decisions: *United States v. Reedy*, 304 F.3d 358 (5th Cir. 2002), *United States v. Reedy*, 145 F. App'x 465 (5th Cir. 2005); this Court's denial of Reedy's first section 2255 motion: *Reedy v. United States*, No. 4:07-CV-024-Y (N.D. Tex. Nov. 3, 2008); and the appellate decision affirming the denial of Reedy's section 2255 motion: *United States v. Reedy*, 393 F. App'x 246 (5th Cir. 2010).

provided subscription access to the adult and child pornographic websites through two systems: the Adult Verification System ("AVS") and the KeyZ system.  AVS subscribers paid $19.95 to receive six months' access to all the websites under the AVS umbrella, which only offered adult pornography.  KeyZ subscribers, on the other hand, purchased access to specific websites for $29.95 per month.  Under KeyZ, task-force officers found 28 websites that distributed child pornography.

Landslide's website displayed banners and online advertisements with hyperlinks that marketed the availability of child pornography to potential subscribers.  For example, many of Landslide's webpages had hyperlinked banners that told visitors: *Click Here For Child Porn*, *Click Here Child Porn*, and *Click Here to Enter Lolita World*.  (Tr., Vol. II at 170–172, 188, 193–194, 210, 268, 284, 292.)  As part of a banner-swap or exchange, similar click-here-for-child-pornography hyperlinked banners were found on the child-pornography websites and linked back to Landslide's KeyZ webpage to purchase access. (*Id.* at 174, 184, 196, 210, 268, 291–292, 303.)  Landslide also offered a free adult classified advertisements section on its site that displayed banners advertising child pornography.  Many of the child-pornography sites contained a flashing *ClicZ* hyperlink banner that linked back to Landslide's classified ads.  (Tr., Vol. II at 174, 196, 210, 218; Tr., Vol. III at 467, 475.)  Ads on the classified section came from postings people made seeking to trade child pornography, have sexual contact with children, and trade KeyZ-password access to child-pornography sites.

Landslide retained a portion of the money it collected from subscriptions sold through the AVS and KeyZ systems; the webmasters received the rest.  From September 1997 through August 1999, Landslide netted nearly three million dollars—$1.2 million of which came from 11 websites that trafficked in child pornography.

On September 8, 1999, task-force officers searched the Landslide business and Reedy's home.  They seized computers and servers from Landslide and seized a desktop and laptop computer from Reedy's home.  Seventy-one pictures of child pornography were found on the home desktop and three pictures of child pornography were found on the home laptop.  Banner graphics for AVS and a copy of the AVS adult classified advertisements were also found on the home computers.  And both the home and Landslide computers contained numerous emails between Landslide and webmasters or customers discussing child pornography.  (Tr., Vol. III at 463–65, 469–80, 483–85; GEs SR-A-1 through JR-A-19; TR-A-1 through TR-A-9.)

During an interview with agents, Reedy admitted he knew some of the websites Landslide sold subscription access to traffic in child pornography and said subscriptions to the child-pornography sites represented 30-to-40 percent of his business.  Also, various emails sent to or by Reedy showed he knew some of the websites accessed through KeyZ offered child pornography, he knew the transmission of child pornography was illegal, and he knew a lot of money could be made from selling subscription access to child-porn websites.

An 89-count superseding indictment charged Reedy with conspiring to traffic in child pornography, trafficking in child pornography, conspiring to engage in activities relating to child pornography, engaging in activities relating to child pornography, and possessing child pornography, in violation of 18 U.S.C. §§ 2252 and 2252A.  A jury convicted Reedy on all counts and this Court sentenced him to 16,020 months (or 1335 years) in prison.  His conviction was affirmed, but concluding many of the counts were duplicitous, the appellate court remanded for resentencing.  *Reedy*, 304 F.3d at 358.  On remand, this Court sentenced Reedy to 2160 months (or 180 years) in prison.  On appeal, Reedy's case was affirmed except for the 180-month sentence for count 89, which was vacated because it exceeded the 60-month statutory maximum.  *Reedy*, 145 F. App'x at 465.  Certiorari review was denied, *Reedy v. United States*, 546 U.S. 1111 (2006), and Reedy timely filed his first section 2255 motion, which this Court denied, *Reedy*, No. 4:07-CV-024-Y.

On February 2, 2012, Reedy moved the Court of Appeals for the Fifth Circuit for authorization to file a successive section 2255 motion.  The appellate court concluded that "Reedy has made a prima facie showing sufficient to warrant a fuller exploration by the district court on his claim that he received ineffective assistance of counsel based on his attorney's failure to inspect the copies of the computer servers provided to the defense."  *In re: Reedy*, No. 12-10129 (5th Cir. Mar. 27, 2012).  This Court was ordered to "dismiss the remaining claims as they do not satisfy the standard for filing a successive" section 2255 motion.  *Id.*

### B.     Issue Presented

Reedy seeks to bring a "new" claim of ineffective assistance of counsel based on evidence Reedy's claim he newly discovered.  He faults his attorney, Wes Ball, for failing "to inspect copies of computer servers received as part of the discovery process," causing Ball to miss what Reedy characterizes as "crucial impeachment and exculpatory evidence."  (Br. at 5.)

In an appendix accompanying Reedy's successive section 2255 motion, Reedy submits reports, affidavits, and emails from Terence James Bates and Brian Rothery. Bates claims to be an expert in computer forensics, and his reports reflect his alleged forensic analysis of Landslide's computers and servers in connection with defending people prosecuted after Reedy's trial in the United Kingdom for allegedly purchasing access to child-pornography websites through Landslide.  (Reedy Appx., Doc. #11  at 19, 24, 29, 46, 59.)  Rothery does not claim to be a computer forensic expert, but states he is "a writer in Ireland" and the coordinator of group or class action of people prosecuted after Reedy's trial in the UK for allegedly buying access to child pornography through Landslide.  (*Id.* at 41, 43.)  Rothery's affidavit reflects conclusions from alleged forensic analysis and investigations of Landslide's computers and servers apparently conducted as part of that group or class action.  (*Id.* )  The forensic analyses from Bates and Rothery were designed to show the people prosecuted in the UK either were unaware they were accessing child pornography when they purchased access through Landslide, or they were the victim of credit-card fraud and identity theft.  (*Id.* at 19, 24, 32, 39, 59.)

Reedy contends the reports, emails, and affidavits from Bates and Rothery show the "copies of computer servers" provided to his attorney "were corrupted as reflected by file dates listed as 9/8/99 on all external files."  (Br. at 27.)  Reedy argues this date "modification" wiped out any evidence of file modifications "between [the] internal creation dates of each file" and the date the servers were seized.  (*Id.* at 31.)  He contends this prevented him from proving the date he allegedly purged the adult classified webpage and closed the banner-exchange program, which, in spite of the $1.2 million he received from selling subscription access to child-pornography sites, he argues would have showed he never intended to make money off child pornography.  (*Id.* )  Reedy also contends the alleged corruption evidence would have impeached the government's computer forensic witness because it would show his process allegedly failed to protect the integrity of the seized Landslide servers.  (*Id.* at 29.)  Reedy argues this evidence of corruption clearly and convincingly shows no reasonable factfinder would have convicted him in light of all the evidence because the "corrupt servers were the nexus from which every other piece of prosecution evidence flowed and was thereby tainted."  (*Id.* at 27.)

## II.    STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA" or "the Act") "was enacted in part to bring finality" to court judgments.  *Garcia v. Quarterman*, 573 F.3d 214, 220, n.32 (5th Cir. 2009) (also noting that the second-or-successive rules in 28 U.S.C. § 2244, which govern successive petitions under 28 U.S.C. § 2254, should be read "*in pari materia* with those under § 2255").  Along that line, the AEDPA "made it

significantly harder for prisoners filing second or successive federal habeas corpus motions to obtain hearings on the merits of their claims." *United States v. Orozco-Ramirez*, 211 F.3d 862, 864 (5th Cir. 2000).

Before a prisoner may receive a merits adjudication of his successive section 2255 motion, he must first pass through two gates. First, the prisoner must move the court of appeals and make a prima-facie showing that his application to file a successive section 2255 motion satisfies the requirements of section 2255(h). *In re: Morris*, 328 F.3d 739, 740 (5th Cir. 2003); *Reyes-Requena v. United States*, 243 F.3d 893, 897-99 (5th Cir. 2001); 28 U.S.C. §§ 2244(b)(3)(C) and 2255(h). This means the prisoner must make a prima-facie showing to the appellate court that his successive section 2255 motion is either based on:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

*Id.*

A prima facie showing "is simply a sufficient showing of possible merit to warrant a fuller exploration by the district court." *Reyes-Requena*, 243 F.3d at 899. The appellate court will grant the request if "it appears reasonably likely" the prisoner's successive section 2255 motion "satisfies the stringent requirements for the filing of a second or successive" section 2255 motion. *Id.*

But "the grant by a court of appeals to file a second or successive motion is . . . tentative," and the district court "is the second gate through which the [prisoner] must pass before the merits of his . . . motion are heard." *Id.* (internal marks omitted).  The district court is still required to "conduct a thorough review" and "must dismiss the motion" if it finds the motion "conclusively demonstrates that it does not meet AEDPA's second or successive [section 2255] motion requirements." *Id.*; *In re: Morris*, 328 F.3d at 741.

## III.   ANALYSIS

Reedy has passed through the first gate: the Fifth Circuit concluded he made a prima-facie showing under section 2255(h)(1) on his claim that "he received ineffective assistance of counsel based on his attorney's [alleged] failure to inspect the copies of the computer servers provided to the defense." *In re: Reedy*, No. 12-10129.  However, a more thorough review shows Reedy cannot present his "new" constitutional claim of ineffective assistance of counsel because he falls considerably short of his burden to clearly and convincingly demonstrate that no reasonable factfinder would have convicted him.  *See* 28 U.S.C. § 2255(h)(1).

Section 2255(h)(1) incorporates the common-law actual-innocence or manifest-miscarriage-of-justice exception to otherwise procedurally-barred constitutional claims. *See Rocha v. Thaler*, 626 F.3d 815, 822-23 (5th Cir. 2010); *see also Schlup v. Delo*, 513 U.S. 298, 313-316 (1995); *United States v. Scruggs*, __ F.3d __, 2012 U.S. App. LEXIS 17247 (5th Cir. Aug. 16, 2012) ("'Actual innocence' is not a free-standing ground for

relief.").  Because Reedy failed to present this constitutional claim of ineffective

assistance of counsel in his original section 2255 motion, he is procedurally barred from

having its merits considered here unless he satisfies the requirements of section

2255(h)(1).  In essence, Reedy must show there is newly discovered evidence that clearly

and convincingly shows his actual innocence.  This means rather than having to show

that but for Ball's alleged deficient conduct there is a reasonable probability of a different

result, *Strickland v. Washington*, 466 U.S. 668, 693-94 (1984), Reedy must now clearly

and convincingly show no reasonable factfinder would have convicted him.  28 U.S.C. §

2255(h)(1).  Only if he meets that burden can he receive relief on his otherwise

procedurally-barred constitutional ineffective-assistance claim.

**A.**   **Reedy's "new" evidence is insufficient to clearly and convincingly establish that no reasonable factfinder would have convicted him because his "new" evidence is incomplete, unsubstantiated, and speculative.**

Reedy's "newly discovered evidence" consists of reports, affidavits, and emails

that (1) claim the backup copies of Landslide's computers and servers provided to his

defense counsel allegedly contain corrupt date-time stamps for many of the files; and (2)

"the 'Click Here Child Porn' banner did not exist on the Landslide homepage as alleged

in the Landslide trials."  (Reedy Appx., Doc. #11 at 34, 41, 49–52, 61.)  In his report,

Bates explains that the alleged date-time stamp contamination or corruption on the

Landslide computers and servers involves an inconsistency between a last-modified date

for error-log files and the latest internal dates for events recorded in those logs.  (Reedy

Appx., Doc. #11 at 57, 61.)  For example, Bates explains that if an error log has a last-modified date of September 8, 1999, then logic would say that log cannot contain a system event dated after September 8.  (*Id.*)  In an email allegedly from Bates to Rothery and forwarded to Reedy, Bates lists numerous files allegedly from the KeyZ and ClicZ directories on the Landslide servers that contain the September 8, 1999, date-time stamps.  (*Id.* at 49–52.)  Bates contends that this shows "the dates and times" of these files "had been seriously compromised" and "was largely the result of running a number of backup routines [that] by their nature altered the dates associated with [the] files."  (*Id.* at 34.)  And Rothery claims, "Our forensics evidence indicates that the 'Click Here Child Porn' banner did not exist on the Landslide homepage as alleged in the Landslide trials."  (*Id.* at 41.)

First, the "new" evidence from Bates and Rothery is incomplete and unsubstantiated.  According to Bates, he was given "copies of files from the main Landslide computers" in September 2006, and has been "examining and analyzing [those] files since that time."  (Reedy Appx., Doc. #11 at 31.)  He states he "inspected . . . copies of backup tapes from" Ball and insists his "investigation of the servers of Landslide, Inc., is ongoing."  (*Id.* at 31, 46.)  Likewise, Rothery states he "obtained the Landslide subscriber database and other related evidence" from Ball in August 2006 and, since that time, "forensic analyses and investigations of the subscriber database and related Landslide computer records and logs" were conducted.  (*Id.* at 41.)  Thus, the reports, emails, and affidavits from Bates and Rothery reveal the only computer evidence

they "forensically" examined were the copies of computers and servers seized at Landslide.

But the evidence showed that two computers were also seized at Reedy's home: a desktop and laptop computer. (Tr., Vol. III at 398–99, 456–57, 481–82.) Neither Bates nor Rothery state they examined these computers, and it is doubtful they would have since they contained images of child pornography. (*Id.* at 461–62, 466–67, 482–83.) Therefore their "forensic" examinations have no impact on the evidence found on the computers seized from Reedy's home. Unfortunately for Reedy, the evidence from the home computers included Landslide banner graphics, which showed Reedy used the home computers for his Landslide business. (*Id.* at 463–65, 469–80, 483–85.) Indeed, Reedy's wife admitted to agents both she and her husband conducted Landslide business from these home computers, but she made sure to emphasize "they were careful not to let [her] kid see it." (*Id.* at 586.) As just mentioned, the home computers contained child-pornography images. They also included email messages between various landslide.com email addresses, webmasters of child-pornography websites, and subscribers to the child-pornography sites, all of which were clearly discussing the availability of and the money to be made from child pornography. (*Id.* at 463–65, 469–80, 483–85.) And they contained 30 pages from Landslide's classified ads where people discussed child pornography, sought to trade KeyZ password access to child-pornography sites, and sought to have sexual contact with children. (*Id.*) These exact same 30 pages were also

found on the Landslide servers.  (*Id.*)  All of this evidence is unaffected by the evidence of alleged date-time stamp corruption on the Landslide computers and servers.

Rothery's claim that his "forensics evidence indicates that the 'Click Here Child Porn' banner did not exist on the Landslide homepage as alleged in the Landslide trials" is unsubstantiated.  (*Id.* at 41.)  Rothery never describes this "forensics evidence," he never provides this "forensics evidence," he never explains the "forensic analyses and investigations" he claims was performed on Landslide's subscriber database and related computer records and logs, and he never explains how his "forensics evidence" proves the *Click Here Child Porn* hyperlink banner did not exist on Landslide's homepage.

Dallas Police Detective Steve Nelson testified, however, that the click-here-for-child-porn hyperlink banners "showed up quite frequently in a bunch of" Landslide's webpages, not just on Landslide's homepage.  (Tr., Vol. III at 170–172, 188, 193–194, 210, 268, 284, 292.)  He also showed the jury the numerous click-here-for-child-pornography hyperlink banners that were on several of Landslide's webpages with the real-time recordings and captures of his visits to Landslide's webpages in April, June, and August 1999.  (*Id.*)  And on cross-examination, Detective Nelson said the click-for-child-pornography hyperlink banner "was always there [referring to the Landslide webpages] and then it just disappeared one day.  I never saw it again."  (Tr., Vol. III at 292.)  Detective Nelson's testimony and real-time recordings and captures of his visits to Landslide's webpages in the months preceding the seizure of Landslide's computers and

servers conclusively refutes Rothery's unsubstantiated claim that the *Click Here Child Porn* or any similar hyperlink banner was not present on Landslide's homepage.

Second, all Bates offers is speculation.  While Bates alleges some of the "dates and times of the files" on the Landslide servers "had been seriously compromised before any of the backup tapes were prepared," he states, "I believe that this contamination was largely the result of running a number of backup routines [that] by their nature altered the dates associated with files."  (Reedy Appx. at 34.)  Bates goes on to state, "I have no reason at this stage to suspect that file content generally was modified by these routines . . . ."  (*Id.* )  The best Bates offers is: "Such contamination raises **the possibility** that file content **could have** been changed (deliberately or accidentally) . . . ."  (*Id.* at 59.) (Emphasis added.)  And he concedes that he has no way of knowing whether this alleged corruption apparent on the copies exists on the original evidence.  (*Id.* at 57, 59.)

Indeed, in an email, Bates identifies *erroz.old0* as a file that "contained some 16,492 server event entries with no evidence of damage or corruption" even though it allegedly has "impossible" date-time stamps.  (Reedy Appx., Doc. #11 at 57.)  In a July 2011 report, Bates alleges roughly 64% of the files on the backup DvD disks contained date-time stamp contamination or corruption, but he cannot state definitely what he believes caused the alleged date-stamp corruption.  (*Id.* at 58, 60.)  Instead, he speculates the date-time stamp contamination resulted from either (1) a "backup process [that] did not collect file information in certain instances"; (2) a "restore process [that] did not correctly restore file information in certain instances"; (3) some files on Landslide's

servers being damaged; or (4) some of the files being "copied, modified, and then replaced" on the servers using "a restore process [that] produced the chronological effect of an intrusive backup procedure." (*Id.*)  And he concedes, "At this stage it is not possible to reliably decide amongst the . . . possibilities." (*Id.*)

Finally, in an email, Bates allegedly identifies numerous files from the "KeyZ and ClicZ directories" on the Landslide servers that contain "corrupted external date-time stamps." (*Id.* at 49–52.)  Again, he never states the date-time stamp alleged corruption had any effect on the content of these files.  Instead, Bates simply conclusory states that "the absence of reliable dates and times has made it . . . difficult to draw any reasonable conclusions concerning the presence or absence of specific files." (*Id.* at 34.)   But Bates never tries to reconcile his speculation against the overwhelming evidence from Detective Nelson and Reedy's admissions.

### B.     Reedy's incomplete, unsubstantiated, and speculative evidence fails to clearly and convincingly show no reasonable factfinder would have convicted him.

The alleged forensic examinations and reports Bates and Rothery provide were not for proving Reedy's innocence, but for defending numerous people prosecuted in the UK in the wake of Reedy's trial.  Bates's and Rothery's investigations sought to show either these people did not realize they were purchasing access to child pornography through Landslide, or they were the victims of credit-card fraud and identity theft.

On the other hand, the evidence of Reedy's guilt was powerful and conclusively proved Reedy knowingly and intentionally sold subscription access to child-pornography

websites.  Detective Nelson, assigned to the Dallas Police Department's *Child Exploitation Unit* and a member of the FBI's *Internet Crimes Against Children Task Force*, testified that on various dates in April, June, and August 1999, he visited numerous child-pornographic websites and bought subscription access to them through Landslide.  (Tr., Vol. II at 144–45, 153, 159, 172–73, 186–87, 197–98, 206–07, 209, 213, 217–19, 223, 225–26, 235, 238–39, 240, 244, 249, 255, 257.)  He used an undercover persona, and he employed a hardware device and a software program to capture on VHS video and computer disk everything he saw and did in real time.  (*Id.* at 157, 160, 162.)

The videos and captures were admitted into evidence, and while the jury watched the videos and viewed the captures, Detective Nelson explained how he visited the child-pornography websites and purchased access to them through Landslide.com.  (*Id.* at 144–45, 153, 159, 172–73, 186–87, 197–98, 206–07, 209, 213, 217–19, 223, 225–26, 235, 238–39, 240, 244, 249, 255, 257.)  His videos and captures showed the jury that on many of Landslide's webpages were click-here-for-child-porn hyperlink banners.  (*Id.* at 170–172, 177, 188, 193–194, 210, 268, 284, 292.)  His video and captures also showed the same or similar banners stating *Click Here For Child Porn* on the child-pornography websites, which linked back to Landslide's KeyZ webpage to purchase access.  (*Id.* at 174, 184, 196, 210, 268, 291–292, 303.)  For nearly all the child-pornography sites he visited, Detective Nelson bought access to them through Landslide's *KeyZ* site, each time receiving a confirmation email from Landslide.  (*Id.* at 198, 206–07, 209, 212–13, 216–18, 219, 223, 226, 233–35, 238–39, 244, 249–50, 255, 257–58; GEs SN-B-3, SN-C-3,

SN-D-3, SN-G-3, SN-I-3, SN-J-3, SN-K-3.)  The emails he received from Landslide were admitted into evidence.  (*Id.* )  Detective Nelson produced his credit-card bills showing the billing from "Landslide Productions, Fort Worth, Texas," for his subscriptions purchases to the child-pornography sites.  (*Id.* at 262–63; GEs SN-L-1, SN-L-2, SN-L-3.)  And the Landslide Sun-2 server contained the "subscription records relative to Steve Nelson's undercover purchase of web sites from Landslide."  (Tr., Vol. III at 512.)  All of Detective Nelson's visits to Landslide and his purchases of subscriptions to the child-pornography site through Landslide occurred before the government seized Landslide's computers and servers on September 8, 1999.

On top of that evidence, the jury heard from U.S. Postal Inspector Steve Huggins. He told the jury that, during an interview, Reedy admitted that he and his wife knew some of the websites they sold subscriptions to contained child pornography, child pornography represented thirty to forty percent of his business, the best webmasters were the foreign child-pornography webmasters because they made more money, and child pornography "was growing and . . . that's where most of his money was coming from." *Reedy*, 304 F.3d at 362; Tr., Vol. III at 597–602.  He admitted Landslide sent $500,000 in wire transfers and $140,000 in checks to webmasters each month, many of them to foreign countries.  (Tr., Vol. III at 599.)  He admitted he developed the AVS and KeyZ systems, the adult classifieds, and the ClicZ system for the adult classifieds.  (*Id.* at 599–600.)  And he admitted he viewed child pornography, though he claimed he did so only after receiving a complaint.  (*Id.* at 601.)  He said he would view the offending website

and then tell the complainer to contact his local police department; however, he would not cease selling subscriptions to the offending site.  (*Id.* )  Evidently the money was just too good.  Moreover, the evidence showed Reedy took his child-porn images and loaded them into the *Paint Shop Pro* program, compressing them into smaller thumbnail images and allowing him to view all the images within the program.  (*Id.* at 466.)  Thus, in light of the evidence gathered by Detective Nelson, the collaborating and matching evidence found on the Landslide servers, the evidence found on Reedy's home computers, and Reedy's admissions, Reedy cannot clearly and convincingly show that had Ball presented Reedy's "new" evidence the jury would have acquitted him.

## CONCLUSION

The government respectfully asks that Reedy's successive section 2255 motion be denied.

Respectfully submitted,

SARAH R. SALDAÑA
UNITED STATES ATTORNEY

s/ Frank L. Gatto
FRANK L. GATTO
Assistant United States Attorney
Texas Bar No. 24062396
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102
Telephone: 817.252.5213
Facsimile: 817.252.5514
E-mail: Frank.Gatto@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on September 14, 2012, I filed this response with the clerk of court

for the U.S. District Court, Northern District of Texas.  I also certify that a copy of this

response was served on:  Thomas Reedy, Register No. 25673-177, USP Marion, P.O.

Box 1000, Marion, IL  62959, by first class mail, return receipt requested No.7010 1060

0001 7184 8833.


s/ Frank L. Gatto
FRANK L. GATTO
Assistant United States Attorney